## LEDL v QUIK PIK FOOD STORES, INC

Docket No. 70495. Submitted December 14, 1983, at Detroit.—Decided April 3, 1984. Leave to appeal applied for.

Ruth Ledl (hereinafter plaintiff) was employed as a general manager of a Quik Pik Food Store in Riverview, Michigan. She and all other store employees were discharged by a new area supervisor for their failure to correct inventory shortages at the store. Ledl filed suit against Quik Pik Food Stores, Inc., in Wayne Circuit Court alleging wrongful discharge, breach of an employment contract, defamation, intentional infliction of emotional distress, and false light invasion of privacy. Plaintiff's husband, John Ledl, sought damages under a derivative claim for loss of consortium. The court, Joseph B. Sullivan, J., granted defendant's motion for summary judgment as to all claims made in plaintiffs' complaint. Plaintiffs appeal. *Held:*

1. There are no grounds for invalidating the employment agreement signed by plaintiff at defendant's request some six months prior to her termination. The agreement specifically provides for termination with or without cause, therefore plaintiff has failed to state a claim for breach of an employment contract.

2. None of the theories advanced by plaintiff create an actionable claim for wrongful discharge.

3. The trial court did not err in granting defendant's motion

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur 2d, Libel and Slander § 445 *et seq.*
[2] 50 Am Jur 2d, Libel and Slander § 445 *et seq.*
[3] 50 Am Jur 2d, Libel and Slander §§ 404, 406-408, 411.
[4] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 5-7, 17, 36-39.

Right to recover damages in negligence for fear of injury to another, or shock or mental anguish at witnessing such injury. 29 ALR3d 1337.

Right to recover for emotional disturbance or its physical consequences in the absence of impact or other actionable wrong. 64 ALR2d 100.

[5, 6] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 5-7, 17.
[6] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance § 44.5.
[7, 8] 62 Am Jur 2d, Privacy §§ 1, 26.

for summary judgment on plaintiff's defamation claim. Her complaint failed to set forth with specificity the necessary elements of a defamation cause of action.

4. The trial court correctly granted defendant's motion for summary judgment on plaintiff's claim of intentional infliction of emotional distress. Defendant's conduct was not sufficient to meet the extreme and outrageous conduct required for imposition of liability under that tort.

5. The trial court correctly granted defendant's motion for summary judgment as to plaintiff's claim of false light invasion of privacy.

Affirmed.

1. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION AT WILL.

   Employers are free to enter into employment contracts terminable at will without assigning cause.

2. LIBEL AND SLANDER — ACTIONS.

   The following elements must be proven to demonstrate liability for defamation: (1) a false and defamatory statement concerning plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation *per quod*).

3. LIBEL AND SLANDER — ACTIONS — COMPLAINTS.

   The essentials of a cause of action for libel or slander must be stated in the complaint, including allegations as to the particular defamatory words complained of, the connection of the defamatory words with the plaintiff where such words are not clear or are ambiguous, and the publication of the alleged defamatory words.

4. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — BASIS FOR LIABILITY.

   One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm; where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (1) to a member of such person's immediate family who is present at the time, whether or not such distress

results in bodily harm, or (2) to any other person who is present at the time, if such distress results in bodily harm.

5. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Liability for intentional infliction of emotional distress exists only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to scream, "Outrageous!".

6. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

A person is not liable for intentional infliction of emotional distress where he has done no more than to insist upon his legal rights in a permissible way.

7. TORTS — INVASION OF PRIVACY — FALSE LIGHT.

False light invasion of privacy is publicity which places the plaintiff in a false light in the public eye.

8. TORTS — INVASION OF PRIVACY — FALSE LIGHT.

Oral communications must be broadcast to the public in general or publicized to a large number of people to support a cause of action for invasion of privacy premised solely upon a disclosure of secret or confidential matter or upon being put publicly in a false light where there has been no misappropriated use of, or physical intrusion into, the private life, employment, property, name, likeness, or other personal place or interest of the plaintiff.

*Logan, Huchla & Wycoff, P.C.* (by *Randall A. Pentiuk),* for plaintiffs.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Michael F. Schmidt),* for defendant.

Before: DANHOF, C.J., and ALLEN and M. E. DODGE,* JJ.

PER CURIAM. Plaintiffs, Ruth Ledl (hereinafter plaintiff) and her husband, John Ledl, appeal from

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the trial court's grant of summary judgment to defendant. Plaintiff's complaint alleged wrongful discharge and/or breach of employment contract, defamation, intentional infliction of emotional distress, and false light invasion of privacy. Plaintiff's husband sought damages for his derivative loss of consortium.

Plaintiff was employed as a general manager for defendant's store in Riverview, Michigan. On February 19, 1982, she and all other store employees were discharged by a new area supervisor for their failure to correct inventory shortages at the store. Plaintiff had been employed with defendant for 8 years and was 57 years old.

On appeal, plaintiff argues initially that summary judgment was erroneously granted on her breach of contract claim. The basis for plaintiff's claim of breach of contract was that she had been told when she accepted employment with defendant that she would continue to be employed so long as her performance was satisfactory. Plaintiff cites *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), *reh den* 409 Mich 1101 (1980), in support of her argument.

Approximately seven and one-half years after plaintiff was hired by defendant, on June 28, 1981, plaintiff signed an employment agreement which stated in part:

"Our Quik Pik Store Employee Policies are the basis of our operations. They are central to the agreement you are undertaking with Quik Pik. They clarify for everyone exactly what is acceptable job performance and employee conduct and what is not.

"You will be held fully accountable for abiding by the Policies expressed in your store copy of Quik Pik Policies/Procedures Manual. Abiding by these Policy state-

ments is a job requirement. In no fashion does this material or anything else presented to you in written or verbal form serve as a guarantee of your future employment with Quik Pik.

\* \* \*

" 'In consideration of my employment, I agree to conform to the rules and policies of Quik Pik, and that my employment and compensation can be terminated, with or without cause, and with or without notice at any time at the option of either the Company or myself. I understand that no Supervisor or representative of Quik Pik Food Stores, Inc., other than the President of the Company, has any authority to enter into any agreement contrary to the foregoing.' "

This employment agreement allows defendant to terminate plaintiff's employment with or without cause.

Although plaintiff alleges that this employment agreement should not be given effect because it is an adhesion contract and because the contract is not supported by any consideration, we believe that the Supreme Court's discussion in *Toussaint* indicates that defendant could properly change its employment policies in the manner indicated in the employment agreement. In *Toussaint,* the Supreme Court stated:

"While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. \* \* \* No pre-employment negotiations need take place and the parties' minds need not meet on the subject, nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally.

\* \* \*

"An employer who establishes no personnel policies

instills no reasonable expectations of performance. Employers can make known to their employees that personnel policies are subject to unilateral changes by the employer. Employees would then have no legitimate expectation that any particular policy will continue to remain in force. Employees could, however, legitimately expect that policies in force at any given time will be uniformly applied to all." *Toussaint, supra,* pp 613, 619. (Footnotes omitted.)

The Supreme Court also noted in *Toussaint, supra,* p 610, that "[e]mployers are most assuredly free to enter into employment contracts terminable at will without assigning cause". Defendant here took the action expressly approved in *Toussaint* and entered into contracts with its employees making the employment of each individual terminable at will. Based upon this agreement, defendant terminated plaintiff's employment. Plaintiff does not allege, and the record does not indicate, that defendant's employment policy was less than uniformly applied. We find no grounds for invalidating the employment agreement signed by plaintiff at defendant's request some six months prior to her termination. Since this agreement specifically provides for termination with or without cause, plaintiff has failed to state a claim for breach of employment contract.

Plaintiff also alleges that she was wrongfully discharged because her discharge violated public policy. While there is a "public policy" exception to the general rule that either party to an employment contract for an indefinite term may terminate it at any time for any reason, *Suchodolski v Mich Consolidated Gas Co,* 412 Mich 692; 316 NW2d 710 (1982), none of the theories alleged by plaintiff creates an actionable claim for wrongful discharge.

Plaintiff next argues that the trial court erred in granting summary judgment on her defamation claim. We find no error. To show liability for defamation, the following elements must be proven:

"(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation *per quod*). Restatement Torts 2d, § 558." *Postill v Booth Newspapers, Inc,* 118 Mich App 608, 618; 325 NW2d 511 (1982), *lv den* 417 Mich 1050 (1983).

This Court has also recognized that a claim for defamation must be specifically pled:

" 'The essentials of a cause of action for libel or slander must be stated in the complaint, including allegations as to the particular defamatory words complained of, the connection of the defamatory words with the plaintiff where such words are not clear or are ambiguous, and the publication of the alleged defamatory words.' " *Pursell v Wolverine-Pentronix, Inc,* 44 Mich App 416, 421; 205 NW2d 504 (1973), quoting 11 Callaghan's Michigan Pleading & Practice (2d ed), § 78.09, pp 256-257.

See also *Hernden v Consumers Power Co,* 72 Mich App 349; 249 NW2d 419 (1976). Plaintiff's complaint here alleged only that:

"21. That on various occasions subsequent to the wrongful termination of plaintiff's employment, defendant, by and through its agents and employees, communicated to various persons including, but not limited, to the Michigan Employment Security Commission and

prospective employers that the reason for plaintiff's discharge was due to inventory control shortages."

Clearly plaintiff's complaint failed to set forth with specificity the necessary elements of a defamation cause of action: the defamatory words complained of, the connection of the defamatory words with plaintiff, and the publication of the alleged defamatory words. Plaintiff admitted at the hearing on defendant's motion for summary judgment that she did not know which employees were told that she was discharged for inventory shortages. Her claim that such a statement was made was based upon the supervisor's statement that plaintiff and her co-workers were being discharged as an example to the other stores within the supervisor's area. The trial court did not err in granting defendant's motion for summary judgment on this claim.

Plaintiff next argues that her claim for intentional infliction of emotional distress was erroneously dismissed. The tort of intentional infliction of emotional distress is described in 1 Restatement Torts, 2d, § 46, pp 71-72:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

"(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

"(b) to any other person who is present at the time, if such distress results in bodily harm."

The "extreme and outrageous conduct" requirement was stated in *Ledsinger v Burmeister,* 114 Mich App 12, 18; 318 NW2d 558 (1982), in the following quotations from § 46, comment *d,* p 73 of the Restatement:

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to scream, 'Outrageous!' "

Where the actor does no more than insist upon his own legal rights, no liability will be imposed. *Ledsinger, supra; Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 392; 239 NW2d 380 (1976). Since we have found that defendant had a legal right to terminate plaintiff's employment with or without cause under the employment agreement signed by plaintiff, we find that the trial court was correct in granting summary judgment to defendant on this ground. In addition, like the trial judge, we do not find defendant's conduct sufficient to meet the extreme and outrageous conduct required for imposition of liability under the tort of intentional infliction of emotional distress.

Plaintiff's remaining claim is that the trial court erred in granting summary judgment on her claim for false light invasion of privacy. False light invasion of privacy is "[p]ublicity which places the plaintiff in a false light in the public eye". *Beaumont v Brown,* 401 Mich 80, 95, fn 10; 257 NW2d 522 (1977). In discussing what was necessary to state a cause of action for invasion of privacy, this

Court stated in *Reed v Pontin,* 15 Mich App 423, 426; 166 NW2d 629 (1968):

"When there has been no misappropriated use of, or physical intrusion into, the private life, employment, property, name, likeness, or other personal place or interest, so that the privacy action is premised solely upon a disclosure of secret or confidential matter or upon being put *publicly* in a 'false light', then if (without deciding) mere words of mouth can ever be actionable (except by a slander action) the oral communication must be broadcast to the public in general or publicized to a large number of people."

The only allegation in plaintiff's complaint was that quoted *supra* in our discussion of plaintiff's defamation claim. This allegation does not state that the reasons for plaintiff's termination were broadcast to the public in general or to a large number of people. In addition, plaintiff does not dispute that she was terminated for inventory shortages. This statement, if made by defendant, is not a falsity or fiction concerning plaintiff, another necessary element of the false light invasion of privacy tort. Prosser, Torts (4th ed), § 117, pp 812-814. We find no error in the trial court's dismissal of this claim.

Affirmed. Costs to defendant.