920 F.2d 932
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sandra K. FOX, Plaintiff-Appellant,
v.
F.W. WOOLWORTH COMPANY, Defendant-Appellee.
 No. 90-1234.
 United States Court of Appeals, Sixth Circuit.
 Dec. 11, 1990.
 
 Before KENNEDY and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is a wrongful discharge action in which plaintiff Sandra K. Fox alleges that defendant F.W. Woolworth Company (Woolworth) breached an implied contract of employment, violated the Michigan Handicappers' Civil Rights Act, and discharged plaintiff in retaliation for filing a workers' compensation claim. The District Court granted summary judgment in favor of Woolworth on each claim and Fox appeals. For the reasons that follow, we AFFIRM.
 
 
 2
 Fox was hired to work in a Flint, Michigan, Woolworth's store on January 11, 1981. She worked in the store's cash office and, in March 1981, became a "floater," working in the office as relief for other office employees as necessary. Fox performed as a floater until the end of May 1985, when, following a work-related neck injury, she went on sick leave. She returned to work in September 1985, and was assigned to the office floater position she held prior to her three-month absence. Fox worked for just two weeks before reaggravating her injury and she went back on sick leave. She asked to return to work five months later in February 1986. The office floater position was no longer available and Woolworth assigned her to the store service desk and layaways. After less than one week in that position, she again complained that her neck injury prevented her from performing her job and she again went on sick leave. In May 1986, Fox was authorized by her physician to return to work with restrictions on lifting and use of her arms above her head. For reasons that are not clear, Fox did not actually return to work again until November 1986, when she was assigned to the toy department. She worked for two weeks before taking another sick leave for an unrelated matter. In January 1987, Fox returned to work, again with restrictions, and was placed back into the toy department. After two weeks, Fox could no longer perform her job due to her injury and went on sick leave again. Fox asked to return to work a final time in late January and was given clearance from her physician to return to work with the restrictions on lifting and arm usage. Woolworth apparently refused to allow her to return, citing a policy of not allowing employees to return to work with restrictions.
 
 
 3
 During each of these absences, and throughout the period from May 1985 until February 1987, Fox supplied Woolworth with medical excuse slips from her treating physician. The final such medical excuse slip was given to Woolworth on February 9, 1987. Therein Fox was authorized to return to work with the lifting and arm usage restrictions. By its terms the medical notice expired on March 9, 1987. On February 27, 1987, a hearing was held before the Michigan Bureau of Workers' Disability Compensation. The case, which was initiated by the Travelers Insurance Company, pertained to whether Fox's workers' compensation benefits should be reinstated.[1] At the hearing, Fox was again informed by Woolworth that she would not be allowed to return to work until her restrictions were lifted. Fox replied that she had an appointment with her physician in late March and would not know about the removal of restrictions until then. When the medical excuse slip expired on March 9, 1987, Fox did not contact Woolworth about returning to work, nor did Woolworth contact Fox. Finally, on March 23, 1987, Fox contacted Woolworth about an unrelated insurance matter and was informed that she had been discharged due to her "failure to report."
 
 
 4
 In December 1988, Fox filed this action in the Genesee County Circuit Court, alleging the following: (1) breach of an implied contract requiring just cause for termination; (2) discrimination in violation of the Michigan Handicappers' Civil Rights Act, Mich.Comp.Laws Ann. Sec. 37.1101 et seq. (West 1985); and (3) unlawful discharge in retaliation for obtaining workers' compensation benefits. Woolworth removed the action to the United States District Court in Flint, Michigan.
 
 
 5
 In December 1989, Woolworth moved for summary judgment on all claims. Fox opposed the motion and moved for summary judgment on the Handicappers' Act claim. The District Court denied Fox's motion and granted summary judgment for Woolworth on all issues. Following entry of judgment plaintiff timely appealed.
 
 
 6
 We review a grant of summary judgment de novo. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Moreover, a court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
 
 A. Breach of Implied Contract
 
 7
 The employment-at-will doctrine in Michigan provides that "[i]n general, in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason." Suchodolski v. Michigan Consol. Gas Co., 412 Mich. 692, 694-95 (1982). Fox argues that an implied employment contract existed between herself and Woolworth which required that she could only be discharged for "just cause." See Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579 (1980), reh'g denied, 409 Mich. 1101 (1981). To support her claim she relies on alleged oral statements made at the time she was hired, the existence of written disciplinary procedures, the existence of a "probationary" period for new hires, and the practice of the store manager of only discharging employees for cause. We agree with the District Court that none of these is satisfactory evidence to show the existence of a "just cause" employment contract in this case.
 
 
 8
 The evidence shows that in 1985 Fox agreed and acknowledged that she was an "at will" employee by executing the New Associates Orientation checklist which provides that "[e]mployment can be terminated, for any reason, at any time, by either party." Joint App. at 106.[2] This clearly creates an "at will" employment relationship in the absence of other overriding evidence. See, e.g., Ford v. Blue Cross & Blue Shield of Michigan, 150 Mich.App. 462, 465-66 (1986) (holding that the language "at any time and for any reason" created an at will employment contract).
 
 
 9
 With regard to the alleged oral statements at the time of Fox's hiring, this Court rejected a virtually identical claim in Pratt v. Brown Machine Co., 855 F.2d 1225 (6th Cir.1988), and the reasoning of that case applies with equal force here:
 
 
 10
 Whatever legitimate expectations [Fox] may have harbored as a result of [the alleged oral statements in 1981], they became unreasonable in [1985] when [Woolworth issued the employee handbook and Fox executed the New Associates Orientation checklist which] clearly express[ed] the company's policy that employment was terminable at will. See Ledl [v. Quik Pik Food Stores, Inc., 133 Mich.App. 583, 588, 349 N.W.2d 529 (1984) ]. There can be little doubt that the employer may unilaterally amend his employment policy. See ibid.
 
 
 11
 Id. at 1235. See also In re Certified Question (Bankey v. Storer Broadcasting Co.), 432 Mich. 438, 457 (1989) (holding that an employer could unilaterally change its policy from one of discharge for cause to one of terminable at will, provided that the employer uniformly gives affected employees reasonable notice of the change). Even assuming that the alleged statements to Fox created an expectation of a "just cause" contract at the time she was hired, the unambiguous evidence indicates that she subsequently learned and acknowledged that her employment relationship was "at will."
 
 
 12
 Fox's contentions that the mere existence of written disciplinary procedures and a probationary period for new hires support her "just cause" theory cannot withstand scrutiny. As to the former, this Court discussed and rejected similar arguments in Dell v. Montgomery Ward and Co., 811 F.2d 970, 972-74 (6th Cir.1987) and Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir.1986), finding that the listing in an employee handbook of causes which may result in discharge did not detract from other clear "at will" language and did not provide a reasonable basis to claim a just cause contract. The same applies here where the clear language of the checklist executed by Fox and the "at will" language contained elsewhere in the employee handbook belie any inference that the existence of the disciplinary procedures might otherwise raise.
 
 
 13
 For the same reasons we reject Fox's contention that the mere existence of probationary employee status creates a reasonable expectation of a "just cause" contract for nonprobationary employees like herself. Fox's reliance on Wiskotoni v. Michigan Nat'l Bank-West, 716 F.2d 378 (6th Cir.1983) to support her claim is misplaced. In Wiskotoni, the employee handbook specifically limited its "at will" language to probationary employees. Id. at 380. We held that the District Court in that case did not err in finding that, in that context, an employee could have a reasonable expectation that employment would be terminated after the probationary period only for just cause. In contrast, here the employee checklist executed by Fox and the employee handbook provisions regarding the "at will" nature of the relationship are not limited and clearly apply to all employees.[3]
 
 
 14
 Finally, Fox argues that the store manager, James Ulishney, had established a "policy" of not terminating employees without just cause which transformed the "at will" employment relationship. It is true that Ulishney testified that he always had "sufficient reason" to discharge an employee, Joint App. at 320, but he also indicated that he understood Woolworth policy to be that he did not need any good cause to do so. Id. at 319-20.
 
 
 15
 To modify an employment contract through the unilateral change in policy which Fox contends, the employee must at least have knowledge of the new policy or practice before modification can occur. See Storer Broadcasting Co., 432 Mich. at 457. This is because only those "legitimate expectations" grounded in an employer's practices and policies can create an implied employment contract. Toussaint, 408 Mich. at 598. Without at least an awareness of the alleged new policy, it can hardly be said that an employee can have a legitimate expectation with regard to the employment relationship. Here Fox offers no evidence that she had an awareness or knowledge of store manager Ulishney's practice, or that any belief, if formed, was reasonable. See also Gatlin and Lyons v. GDSI, Inc. et al., No. K86-218 CA4, slip op. at 8 (W.D.Mich. Jan. 26, 1988) (reproduced at Joint App. 138-154). Absent such evidence, Fox's modification theory must fail.
 
 B. Handicapper Discrimination
 
 16
 Fox complains that "Woolworth's policy of not allowing [her] to return to work with restrictions, although the restrictions do not interfere with her ability to perform her job," violated the Michigan Handicappers' Civil Rights Act (Act). Plaintiff's Brief at 31. Further, she alleges that "Woolworth's discriminatory transfers ... to more strenuous duties likewise violates the Act." Id. at 32.
 
 The Act provides in part that
 
 17
 (1) An employer shall not:
 
 
 18
 (a) Fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of the particular job or position.
 
 
 19
 (b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.
 
 
 20
 Mich.Comp.Laws Ann. Sec. 37.1202(1) (West 1985). Woolworth contends that the Act does not apply in this case since Fox's impairment prevented her from performing her job functions and that Fox is not a handicapped person under the Act. "Handicap" is defined as "a determinable physical or mental characteristic of an individual ... which may result from ... injury ... which ... is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion." Mich.Comp.Laws Ann. Sec. 37.1103(b)(i) (West 1985) (emphasis added). And in Carr v. General Motors Corp., 425 Mich. 313, 321 (1986), the Michigan Supreme Court held that the Act "only protect[s] handicaps which are unrelated to ability to perform the duties of" one's job.
 
 
 21
 The District Court held that Fox's discharge did not violate the Act since "[b]ased on the overwhelming record evidence, the Court finds that [Fox] was not able to perform the duties of her particular job" due to her physical restrictions. Joint App. at 20.[4] Indeed, Fox does not dispute that she was unable to perform the duties of her particular jobs at the time when she went on sick leave from each of her three different jobs.[5] Fox, however, claims that she was fully capable of performing her office floater job in February 1986[6] and that Woolworth's failure to reinstate her to that position was part of a plan by Woolworth to discriminatorily transfer her, when she was returning from her numerous sick leaves, from jobs which she could perform to increasingly strenuous positions. There is simply no evidence that Woolworth had a discriminatory motive for placing Fox in the various positions each time she returned from sick leave.
 
 
 22
 Fox also contends, though inartfully, that Woolworth violated section 102(2) of the Act, Mich.Comp.Laws Ann. Sec. 37.1102(2) (West 1985), which provides that "[a] person shall accommodate a handicapper for purposes of employment." She essentially argues that Woolworth was either required to place her back into her previous position if she wanted it or was required to offer her another position for which her restrictions would not interfere. The District Court recognized this, stating that "[p]laintiff argues that since there was some job at Woolworth which Plaintiff was capable of performing given her medical restrictions, Defendant violated the Act by not extending Plaintiff such a position." Joint App. at 20 n. 5. The District Court rejected this argument, citing Marsh v. Department of Civil Service, 173 Mich.App. 72, 80 (1988), appeal denied, 432 Mich. 874 (1989), which held that "[t]he duty to accommodate imposed under the Handicappers' Act does not extend to new job placement." See also Rancour v. Detroit Edison Co., 150 Mich.App. 276, 279 (1986), appeal denied, 428 Mich. 860 (1987). Fox counters that Marsh does not control her claim that Woolworth refused to reinstate her to the office floater position, since that was not a "new" job, but was her "old" job. Woolworth did keep the office floater position available during Fox's first sick leave from May 1985 to September 1985. However, after Fox again went on sick leave after less than two weeks of work, Woolworth filled the position with someone else prior to Fox's second return in February 1986. Ashworth v. Jefferson Screw Prods., Inc., 176 Mich.App. 737, leave denied, 433 Mich. 873 (1989), concerned an employee who argued that the employer was required to hold his position open for him for a three-month rehabilitation period as a reasonable accommodation under the Handicappers' Act. The Michigan court rejected that argument, stating that "[n]owhere in the handicappers' act do we find a requirement that an employer leave a job open until a plaintiff's handicap is removed." Id. at 745. Except for the few days she worked in September 1985, Fox was absent from her office job for almost nine months and Woolworth was not required to hold that position open for her. Because Woolworth was not required to hold Fox's previous position open nor to offer Fox any particular new job upon her return from sick leave, Fox's Handicappers' Act claim was correctly dismissed.[7]
 
 C. Retaliatory Discharge
 
 23
 Fox alleges that she was discharged on March 23, 1987, for seeking and obtaining workers' compensation benefits. If shown, this would violate Michigan law which forbids such a retaliatory discharge even when an "at will" employment relationship exists. See Suchodolski, 412 Mich. at 695-96. Under Michigan law, Fox has the burden of proving that the filing of the workers' compensation claim or reinstatement of benefits "was a significant factor in [Woolworth's] decision to discharge" her. Goins v. Ford Motor Co., 131 Mich.App. 185, 198 (1983) (emphasis added). However, to support her allegation of retaliation, Fox relies exclusively on the proximity in time between the time she was granted a continuation of her workers' compensation benefits on March 2, 1987 and her discharge on March 23, 1987. In holding that this proximity evidence was insufficient to resist summary judgment, the District Court relied on our holding in Polk v. Yellow Freight System, Inc., 801 F.2d 190 (6th Cir.1986), wherein we applied the Michigan "significant factor" test to reverse a jury finding of retaliatory discharge, stating that the mere timing of a discharge and the exercise of protected rights, "without further evidence of an improper motive or action on defendant's part and where other events intervene, is insufficient to support a finding" of retaliation. Id. at 197. Here there was an "other event" which intervened between the reinstatement of Fox's benefits on March 2 and her discharge on March 23, namely her failure to either report or offer to return to work or to provide Woolworth with a new medical excuse slip after the expiration of her medical restrictions on March 9, 1987. Although the store manager, Mr. Ulishney, testified that he believed he had the authority to discharge an employee despite their seeking or receiving benefits, it does not follow that Fox's discharge was a result of the workers' compensation claim. Mr. Ulishney, despite Fox's counsel's interrogation on the issue, did not testify that her discharge had anything to do with her workers' compensation claim. Other than the timing of events, which alone is insufficient to create a jury question, there is no evidence that Fox's discharge was the result of her workers' compensation claim.[8] The record contains no testimony, no documents, nor any other evidence that even raises a plausible inference that Fox was discharged because she petitioned for and received reinstatement of workers' compensation benefits.[9]
 
 
 24
 For all of the foregoing reasons, the District Court's grant of summary judgment in favor of Woolworth is AFFIRMED.
 
 
 
 [1]
 Fox had initially filed for workers' compensation benefits in April 1985 and received them from Woolworth's insurer, Travelers Insurance Company, until Travelers contested the same in May 1986
 
 
 [2]
 By signing the checklist, Fox acknowledged the contents of the 1985 employee handbook, entitled Welcome to Woolworth. The relevant provision in the handbook reads as follows: "However, nothing in this book should be considered as providing for employment of a definite period or anything other than terminable at the option of either party." Joint App. at 258
 
 
 [3]
 To the extent that Fox claims she had a subjective belief that the probation policy meant that she could only be terminated for good cause after the probationary period, such a claim is unavailing. As we recently reiterated in Pachla v. Saunders Sys., Inc., 899 F.2d 496, 501 (6th Cir.1990), " 'a mere subjective expectancy on the part of an employee ... [does] not create a legitimate [Toussaint ] claim.' " (Quoting Boynton v. TRW, Inc., 858 F.2d 1178, 1185 (6th Cir.1988) (en banc).)
 
 
 [4]
 The District Court did not make a finding whether Fox's injury and restrictions rendered her otherwise handicapped, although she likely met the Michigan Act's requirements, see Gloss v. General Motors Corp., 138 Mich.App. 281, 283 (1984), which are to be liberally construed. Crittenden v. Chrysler Corp., 178 Mich.App. 324, 331 (1989)
 
 
 [5]
 Although the relevant question is really whether an individual is incapable of performing the job duties at the time of discharge rather than when medical leave is taken, see Wilson v. Acacia Park Cemetery Ass'n, 162 Mich.App. 638, 643-44 (1987), Fox does not claim that she could perform her toy department responsibilities as of March 23, 1987, the date of her discharge
 
 
 [6]
 Fox underwent surgery to partially remedy her injury following her second sick leave from the office position in September 1985. She asserts that her ability to perform the office job was completely restored by the surgical procedure
 
 
 [7]
 In the her Motion for Summary Judgment in the District Court Fox also argued that Woolworth had not allowed Fox to return to work because of a policy against allowing employees to work with physical restrictions. However, this argument was so vague that the District Court did not even feel the need to address it. On appeal Fox clarifies and expands this argument to assert that this alleged policy was applied to Fox in a fashion that resulted in denial of her placement into open positions for which she was otherwise qualified. Because Fox did not properly raise this issue below, we will not address it on appeal. See Sigmon Fuel Co. v. TVA, 754 F.2d 162, 164-65 (6th Cir.1985) (citing cases)
 
 
 [8]
 See also Clifford v. Cactus Drilling Corp., 419 Mich. 356, 360 (1984) ("We cannot agree, however, that an employee's protection from discharge in retaliation for filing a workers' compensation claim necessarily includes protection from discharge because of absence from work because of a work-related injury.")
 
 
 [9]
 If anything, the record controverts Fox's retaliation claim. The February 1987 hearing concerned reinstatement of benefits and was initiated not by Woolworth, but by Travelers Insurance. Woolworth knew that Fox had filed for, and received, benefits since 1985 and on four separate occasions allowed her to return to employment