NOT RECOMMENDED FOR FULL-TEXT PUBLICATON
File Name: 14a0704n.06

No. 13-1682

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Sep 08, 2014

DEBORAH S. HUNT, Clerk

RAAKESH C. BHAN, M.D.,

  Plaintiff-Appellant,

v.

BATTLE CREEK HEALTH SYSTEMS, *ET AL.*,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

**OPINION**

Before: BOGGS and MOORE, Circuit Judges; BARRETT, District Judge.[*]

BARRETT, District Judge. At issue in this appeal are claims stemming from Raakesh Bhan, M.D.'s loss of clinical-staff privileges at the Michigan hospitals of Borgess Medical Center ("Borgess") and Battle Creek Health Systems ("BCHS"). Bhan contends that in depriving him of clinical-staff privileges, Borgess, BCHS, and/or their respective executive officers tortiously interfered in his business relationships, defamed him, and breached their contractual relationships with him. All of those claims were dismissed by the district court pursuant to Fed. R. Civ. P. 12(b)(6), except the defamation claim against Borgess and its employees which was dismissed pursuant to Fed. R. Civ. P. 56. For the reasons given below, we affirm the dismissal of those claims.

---

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

### A. Factual Summary

The two hospitals involved in this case – Borgess and BCHS – provide hospital services in Michigan. Borgess's executive officers include President and Chief Executive Paul Spaude, Chief Medical Officer Terry Baxter, M.D., and Chief Quality Officer Robert Brush, M.D. BCHS's executive officers include President and Chief Executive Officer Denise Brooks-Williams, former Chief Executive Officer Patrick Garrett, and former Chief Medical Officer Jeffrey Mitchell, M.D.[1]

Bhan was a critical-care doctor (also called an "intensivist") of Indian descent who provided critical-care medical services in Kalamazoo, Michigan and Calhoun, Michigan. He initially received clinical-staff privileges to provide such medical services at BCHS in 1986 and at Borgess in 1991. As a practitioner with staff privileges, Bhan was subject to the Medical Staff Bylaws of the hospitals. The Medical Staff Bylaws are the mechanism through which the Board of Trustees delegates to the Medical Staff the responsibility of monitoring medical care to assure quality of care and to make recommendations to the Board of Trustees regarding the evaluation and monitoring of clinical performance. Included among those numerous bylaws are the procedures for applying for reappointment, for summary suspension, and for hearings and appeals. Also included among those bylaws are provisions for immunity and release of liability.

#### 1. Borgess

On February 27, 2007, Bhan suffered a stroke. He alleges that the stroke was caused by the Borgess Bedside Policy implemented by Baxter and Brush in January 2007 under which a

---

[1]Garrett departed in 2009 at which time Brooks-Williams took over the position. Mitchell departed in early 2010.

practitioner was required to be at the bedside of a patient in the Intensive Care Unit within five minutes of being paged. According to Bhan, he had to sleep at the hospital to comply with the Bedside Policy because Baxter and Brush interfered with his attempts to obtain assistance from others in meeting this policy. Baxter is alleged to have interfered because of Bhan's race and because Baxter's wife was a member of a competing intensivist practice at Borgess at that time. Brush is alleged to have interfered because he received a financial benefit from being a former member of the competing intensivist practice at Borgess from which he had received a payout upon his departure.

After more than six months of stroke rehabilitation, Bhan resumed his duties at Borgess to some extent. According to Bhan, he had fully recovered in so far as his abilities to perform at the highest level as a critical-care practitioner.

After his return, Bhan's qualifications for clinical-staff privileges came under scrutiny. On or about April 14, 2009, Borgess summarily suspended Bhan's clinical-staff privileges. Bhan alleges the summary suspension was issued based upon inadequate facts and improper procedures. The Medical Executive Committee purportedly recommended setting aside the summary suspension initially, but later approved it as a result of actions taken by Baxter, Brush, and Spaude. Although Bhan subsequently received a "fair hearing," he contends that the hearing was not conducted in accordance with the procedures set forth in the Medical Staff Bylaws. Bhan's clinical-staff privileges at Borgess ultimately were revoked.

## 2. BCHS

Bhan alleges that on or about January 26, 2010, BCHS suspended his clinical privileges for primary responsibility of patient care in the Intensive Care Unit based on inadequate facts

and improper procedures. Subsequently, Brooks-Williams and BCHS provided a report to the National Practitioner's Data Bank concerning that suspension. According to Bhan, those actions were taken even after multiple tests requested by Garrett, Mitchell, and Brooks-Williams confirmed that he could practice as a critical-care intensivist. Although Bhan received a "fair hearing," he contends that the hearing was not conducted in accordance with the procedures set forth in the Medical Staff Bylaws.

## B. Procedural History

Bhan filed his initial Complaint in the Western District of Michigan on February 26, 2010. Thereafter, the district court entered an order staying the case, which was lifted in June 2011 after Bhan exhausted his administrative remedies.

On August 10, 2011, Bhan filed his eighteen-count Second Amended Complaint. All of the defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The district court granted the motions as to the claims for tortious interference, defamation against BCHS and its executives, due-process violations under 42 U.S.C. § 1985, breach of contract, conspiracy, and injunctive relief. The only remaining claims alleged violations of Michigan's Elliot-Larsen Civil Rights Act, violations of the Americans with Disabilities Act, and defamation against Borgess and its executives. All of those remaining claims were later dismissed pursuant to Fed. R. Civ. P. 56.

## II. JURISDICTION

The district court had federal-question jurisdiction over this case pursuant to 28 U.S.C. § 1331. The district court had supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367. This court now has jurisdiction because Bhan has appealed from a final

judgment of a federal district court that disposed of all of his remaining claims. 42 U.S.C. § 1291.

### III. STANDARD OF REVIEW

All of the issues raised in this appeal are reviewed de novo. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428 (6th Cir. 2012) (Rule 12(b)(6) dismissal); *Donald v. Sybra*, 667 F.3d 757, 760 (6th Cir. 2012) (Rule 56 dismissal).

In reviewing the claims pursuant to Fed. R. Civ. P. 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[T]o survive a motion to dismiss[,] a complaint must contain 1) 'enough facts to state a claim to relief that is plausible,' 2) more than 'a formulaic recitation of a cause of action's elements,' and 3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also In re Sofamor Danek Grp.,* 123 F.3d 394, 400 (6th Cir. 1997) (stating that a court "need not accept as true legal conclusions or unwarranted factual inferences"). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Under Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. ANALYSIS

### A. Statutory Immunity

The BCHS Appellees argue that they are entitled to statutory immunity under the Health Care Quality Improvement Act, 42 U.S.C. § 11101 *et seq.* BCHS Br., pp. 19-20. Under the Act, members of a professional-review body "shall not be liable in damages under any law of the United States or of any State . . . with respect to the action" if the professional-review action was taken:

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. §§ 11111(a)(1), 11112(a). A professional review is presumed to satisfy these standards, unless the presumption is rebutted by a preponderance of the evidence. 42 U.S.C. §§ 11112(a).

We agree with the district court that Bhan pleaded sufficient facts to avoid a Rule 12(b)(6) dismissal based upon statutory immunity, including facts that the BCHS Appellees relied upon an inadequate set of criticisms and did not afford him adequate notice and hearing

procedures under the circumstances. Whether and to what extent any of the BCHS Appellees took part in the peer-review process also is not clear at the initial stage of litigation. Given that the statute contemplates the receipt of evidence to rebut the presumption of immunity in such circumstances, dismissing the claims based upon statutory immunity would be premature. Accordingly, we affirm the district court's judgment denying statutory immunity to BCHS.[2]

## B. Tortious Interference

In Michigan, the elements of tortious interference with a business relationship are: 1) the existence of a valid business relationship or expectancy; 2) knowledge of the relationship or expectancy on the part of the defendant; 3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and 4) resultant damage to the plaintiff. *Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 492 Mich. 40, 45, 821 N.W. 2d 1, 3 (Mich. 2012). "One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in the law for the purpose of invading the contractual rights or business relationship of another." *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251 Mich. App. 125, 131, 649 N.W.2d 808, 812 (Mich. App. 2002) (internal quotations omitted). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v. R.L. Polk Co.*, 193 Mich. App. 1, 12-13, 483 N.W.2d 629, 635 (Mich. App. 1992). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l*, 251 Mich. App. at 131, 649 N.W. at 812; *see also Pontiac Gen. Hosp. v. Chubb*

---

[2] BCHS also argues it is entitled to contractual immunity. BCHS Brief, p. 17. That argument is addressed *infra* in regards to the breach of contract claim against BCHS.

*Corp.*, No. 267234, 2006 Mich. App. LEXIS 2187, at *6-8 (Mich. App. July 18, 2006) (applying

tortious-interference standard on a motion to dismiss).

### 1. Count 3

In Count 3, Bhan alleges that Baxter, Brush, Spaude, and Borgess tortiously interfered

with Bhan's patient relationships.[3] The district court's dismissal of Count 3 against Baxter and

Brush primarily focused on the tenuous connection between the allegations concerning their

motives for acts taken in 2007 in relation to the Bedside Policy and their motives for the acts

taken in 2009 in relation to the suspension and revocation of Bhan's clinical-staff privileges. As

to the dismissal of Count 3 against Spaude, the district court determined that there were

insufficient allegations to state a plausible claim. We agree with the district court.

As the suspension and revocation of staff privileges are not acts that are unlawful per se,

Bhan must sufficiently allege that the otherwise lawful acts were taken with malice and improper

motive for the purpose of interfering with his current and future patients. He has not done so.

Bhan contends that Baxter and Brush had financial motives for their acts in 2009, which

he supports with allegations of financial motives that existed in 2007. Appellant Br., pp. 13-14.

In particular, he alleges Baxter had a financial motive because his wife was a member of the

competing intensivist practice at Borgess in 2007, and Brush had a financial motive because he

was a former member of the competing intensivist practice at Borgess from which he received a

large payout upon his departure. Appellant Br., p. 14. He contends that Baxter and Brush acted

upon their financial motives in 2007 by implementing a Bedside Policy and by precluding Bhan

---

[3] Although Bhan brought Count 3 against Ascension, he does not argue that the district
court improperly dismissed Ascension on the separate and independent basis that it could not be
vicariously liable as the parent corporation of Borgess. Therefore, the court need not consider
the claim against Ascension.

from obtaining the assistance of others that he needed to comply with that Bedside Policy. Appellant Br., p. 13. He asks us to infer that Baxter and Brush acted with the same financial motives in relation to his suspension and revocation in 2009. Appellant Br., pp. 13-14. However, we do not find such an inference to be warranted. The two incidents lack temporal proximity as well as any reasonable connection. There is not a single allegation in the Second Amended Complaint that connects the purported financial motives of Baxter and Brush in 2007 to their actions in 2009. *Reed v. Michigan Metro Girl Scout Council*, 201 Mich. App. 10, 13, 506 N.W.2d 231, 233 (Mich. App. 1993) (holding that purpose for interfering was not sufficiently alleged when allegations as to personal motive stemmed from a prior transaction between the parties). Those deficiencies make the connection too tenuous to sustain a plausible tortious interference claim against Baxter and Brush based upon a financial motive.

Likewise, Bhan has not sufficiently alleged a racial motive of Baxter. There is not a single factual allegation in the Second Amended Complaint that plausibly suggests Baxter acted with racial animus. Bhan's threadbare and conclusory allegations as to race do not suffice.

His allegations of tortious interference by Spaude also do not withstand scrutiny. Spaude is alleged only to have supported the actions of Baxter and Brush. No factual allegations even remotely suggest that Spaude acted with malice or for an improper purpose.

Accordingly, we affirm the judgment of the district court dismissing Count 3.

### 2. Count 5 and Count 6

Count 5 and Count 6 allege that Borgess executives Baxter, Brush, and Spaude and BCHS executive Brooks-Williams tortiously interfered with Bhan's business relationships with their respective employers. Under Michigan law, it is well established that a party must show

9

that the corporate agent is a third party to a contract or business relationship to maintain a cause of action for tortious interference. *Reed*, 201 Mich. App. at 13, 506 N.W. at 233 (granting dismissal of a tortious interference claim where allegations did not raise an inference that the corporate agent acted solely for a personal benefit). Corporate agents cannot be liable for tortious interference with the corporation's contracts or business relationships unless they acted solely for their own benefit with no benefit to the corporation. *Id.*; *see also Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 772-73 (E.D. Mich. 2010) (dismissing tortious interference claim against agent pursuant to Rule 12(b)(6) where plaintiff failed to set forth allegations that the agent acted for a personal benefit with no benefit to the corporation); *Experts, LLC v. JPMorgan Chase & Co.*, No. 13-cv-12550, 2013 U.S. Dist. LEXIS 117428, at *7 (E.D. Mich. Aug. 20, 2013) (applying Michigan law, the court dismissed a tortious interference claim where plaintiff failed to sufficiently allege in the complaint how the defendant acted outside the scope of his employment for his own benefit).[4]

The Second Amended Complaint fails to provide sufficient facts from which it can reasonably be inferred that any of the executive officers acted solely for their personal benefit. As explained with respect to Count 3, such allegations as to Baxter, Brush, and Spaude are inadequate. Further, Bhan's allegations suggest that Baxter acted at least in part for the benefit

---

[4] Although Bhan contends that the district court improperly relied on the summary-judgment decision in *Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 290 Mich. App. 577, 606-08, 802 N.W.2d 682, 698-99 (Mich. App. 2010), *reversed on other grounds by Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.,* 492 Mich. 40, 45, 821 N.W.2d 1, 3 (Mich. 2012), for the above propositions of law, we disagree. Not only did the Michigan Supreme Court's subsequent reversal of that decision not address, much less overrule, those general propositions of law, but caselaw demonstrates that the standard applies equally on a motion to dismiss.

of Borgess, as he purportedly viewed Bhan as a "business competitor having adverse interest to the financial operations of Borgess[.]"  R. 51, p. 1417.

The allegations as to Brooks-Williams are similarly inadequate.  The only factual allegations as to Brooks-Williams are that she ignored conclusive reports that Bhan was fully recovered from his stroke, ordered him to undergo more testing, designated requirements for independent proctors, threatened suspension of privileges, and ultimately suspended Bhan's privileges in the Intensive Care Unit of BCHS.  None of those allegations plausibly show that Brooks-Williams acted solely for her personal benefit without any benefit to BCHS.  Although Bhan argues that a jury should be permitted to discern whether a personal motive existed, none of the cases on which he relies involve circumstances where, as here, no facts supporting a personal motive have been alleged.  Appellant Reply, pp. 5-9.[5]

Accordingly, we affirm the judgment of the district court dismissing Counts 5 and 6.

### A.  Defamation

To sustain a claim for defamation under Michigan law, a plaintiff must allege: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication to a third party; 3) fault amounting to at least negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod).  *Rouch v. Enquirer & News of Battle Creek, Mich.*, 440 Mich. 238, 251, 487 N.W.2d 205, 211 (Mich. 1992).  "The essentials of a

---

[5] Further, the case *Jim-Bob, Inc. v. Mehling*, 178 Mich. App. 71, 96-97, 443 N.W.2d 451, 462-63 (Mich. App. 1989), upon which Bhan relies is inapposite.  That case addressed whether the existence of legitimate personal or business reasons for interfering with a contract relieved the defendant of liability.  *Id.*  It did not address the pleading of a personal motive of a corporate officer to maintain a plausible claim against him for tortious interference with his employer's contract.

cause of action for [defamation] must be stated *in the complaint*," including allegations as to the exact language that the plaintiff contends is defamatory, the connection of the defamatory words to the plaintiff where such words are not clear or are ambiguous, and the publication of the alleged defamatory words. *Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich. App. 583, 589, 349 N.W.2d 529, 587 (Mich. App. 1984) (internal quotations omitted) (emphasis added); *see also Thomas M. Cooley Law Sch. v. Doe*, 300 Mich. App. 245, 262, 833 N.W.2d 331, 341 (Mich. App. 2013); *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich. App. 48, 53-54, 495 N.W. 2d 392, 395 (Mich. App. 1992). Inherent in those requirements is that the allegations must set forth where, when, and to whom the alleged statements were published. *Hantz Group v. Haney*, No. 292954, 2010 Mich. App. LEXIS 2288, at *14 (Mich. App. Nov. 30, 2010); *Rouch*, 440 Mich. at 272-73, 487 N.W.2d at 220 (Riley, J., concurring); *Hernden v. Consumers Power Co.*, 72 Mich. App. 349, 356, 249 N.W.2d 419, 422 (Mich. App. 1976).

### 1. Count 7

Count 7 alleges defamation against Borgess, Baxter, Brush, and Spaude. Bhan contends on appeal that the district court erroneously failed to adjudicate that claim on summary judgment. Appellant Br., pp. 21-22. Yet, in his reply brief, Bhan concedes that the district court addressed the claim on summary judgment in a footnote that he inadvertently overlooked. Appellant Reply, pp. 9-10. He specifically concedes that the district court determined that Bhan had waived the claim by failing to address it in his response to the Borgess Appellees' motion for summary judgment. *Id.* Given those concessions and the fact that the district court addressed the claim on summary judgment, the district court did not error in failing to adjudicate Count 7. Accordingly, we affirm the district court's judgment dismissing Count 7.

### 2. Count 10

Count 10 alleges defamation against BCHS, Mitchell, Garrett, and Brooks-Williams.[6] The district court dismissed Count 10 because the allegations as to Mitchell and Garrett were not identified with specificity and because the allegations as to BCHS and Brooks-Williams that merely restated the outcome of the Fair Hearing and referenced the National Practitioner Data Bank report, attached as Exhibit D to the Second Amended Complaint, were insufficient. We agree with the district court.

The specific factual allegations on which Bhan relies in support of his defamation claim are:

- "Mitchell and Garrett distributed and published to third-parties orally and in writing numerous communications contending that the Plaintiff lacked sufficient cognitive and dexterity skills to adequately perform his functions as a critical care practitioner."

- "[O]n or about January 26, 2010, Defendant Williams on behalf of BCHS submitted a report to the National Practitioner Data Bank regarding the suspension of the Plaintiff's Intensive Care Unit clinical privileges at BCHS, see 'Exhibit D'."

- "The information provided to the National Practitioner Data Bank by the Defendant[s] Williams and BCHS was false."

Appellant Br., p. 20 (citing R. 51, pp. 1436-37). As to the latter two allegations, Bhan argues that BCHS and its executives were on notice that he was alleging the falsity of the "entire report." Appellant Br., p. 21.

Count 10 fails because Bhan has not alleged defamation with the requisite specificity. The only allegation as to Mitchell and Garrett concerns oral and written "communications."

---

[6] Although Bhan brought Count 10 against Trinity, he does not argue that the district court improperly dismissed Trinity on the separate and independent basis that it could not be vicariously liable as the parent corporation of BCHS. Therefore, we need not consider the claim against Trinity.

That vague allegation does not identify where, when, or to whom the alleged defamatory words were published, which is fatal to his claim. Also fatal to his claim is that the allegation merely summarizes the words alleged to be defamatory. That summary does not satisfy the requirement of setting forth the exact language alleged to be defamatory, and it raises the inference that the statements at issue were merely un-actionable opinions rather than objective statements of fact upon which a claim could proceed. *Thomas M. Cooley Law Sch.*, 300 Mich. App. at 262, 833 N.W. at 341-342 (plaintiff must identify the exact language alleged to be defamatory); *Ireland v. Edwards*, 230 Mich. App. 607, 617, 584 N.W.2d 632, 637 (Mich. App. 1998) (opinions generally are not defamatory because they cannot be proven false).

Similarly, the allegations as to Brooks-Williams and BCHS are deficient because they do not identify the exact language alleged to be defamatory. Although Bhan identifies the National Practitioner Data Bank as the publication and identifies the approximate date on which it was published, he baldly asserts that the "entire report" was defamatory. Appellant Br., p. 21. Yet, the report contains approximately twenty separate propositions, at least some of which are true. For example, the identities and dates alleged by Bhan in the Second Amended Complaint are consistent with the parties and dates identified in the report. Likewise, Bhan's allegation in the Second Amended Complaint that BCHS removed his privilege of primary responsibility for patients in the Intensive Care Unit is consistent with the action described in the report. Other statements in the report appear simply to restate the outcome of the proceedings concerning

Bhan's privileges at BCHS.[7]  Bhan therefore cannot plausibly demonstrate that the entire report was false.

Accordingly, we affirm the district court's judgment dismissing Count 10.

## B.  Breach of Contract

Bhan asserts claims for breach of contract against Borgess in Counts 11 and 12, and against BCHS in Count 13.[8]  Those claims are based entirely upon alleged breaches of the Medical Staff Bylaws of Borgess and BCHS, respectively.[9]

To proceed with his breach-of-contract claims, Bhan first must show the existence of an enforceable contract.  *Miller-Davis Co. v. Ahrens Constr., Inc.*, 296 Mich. App. 56, 71, 817 N.W.2d 609, 619 (Mich. App. 2012).  A valid contract requires parties competent to contract, a proper subject matter, legal consideration, and mutuality of agreement and obligation.  *Thomas v. Leja*, 187 Mich. App. 418, 422, 468 N.W.2d 58, 60 (Mich. App. 1991).

We have found no cases in Michigan where a state court held that Medical Staff Bylaws create a contractual relationship with a physician who applies for or is granted clinical-staff privileges.  *See Macomb Hosp. Ctr. Med. Staff v. Detroit-Macomb Hosp. Corp.*, No. 182394,

---

[7] Several courts have granted immunity for the publication of a National Practitioner Data Bank report where, as here, the actions reported actually occurred but the plaintiff disputed the underlying basis for those actions.  *See Schindler v. Marshfield Clinic*, No. 05-C-705-C, 2007 U.S. Dist. LEXIS 1496, at *41-42 (W.D. Wis. Jan. 4, 2007); *Odom v. Fairbanks Mem. Hosp.*, 999 P.2d 123, 130-31 (Alaska 2000).

[8] Count 13 also is brought against Trinity.  However, as explained above, Bhan does not argue that the district court improperly dismissed Trinity on the separate and independent basis that it could not be vicariously liable as the parent corporation of BCHS.  Therefore, we need not consider the claim against Trinity.

[9] The Medical Staff Bylaws of Borgess and BCHS are attached to the Second Amended Complaint and are integral to Bhan's claims.  Thus, they are properly considered in ruling on a motion to dismiss.  *Com'l Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

1996 Mich. App. LEXIS 1680, at *1 (Mich. App. Dec. 20, 1996) (indicating that Medical Staff Bylaws did not create a contractual relationship); *see also Feyz v. Mercy Mem'l Hosp.*, 264 Mich. App. 699, 705, 692 N.W.2d 416, 420 (Mich. App. 2005) (declining to decide whether Michigan law recognizes a breach-of-contract claim based on breach of corporate bylaws), *vacated and remanded on other grounds*, 475 Mich. 663, 719 N.W.2d 1 (Mich. 2006). Recently, this Circuit has determined, albeit in non-binding opinions, that Medical Staff Bylaws do not create a contractual relationship under Michigan law even when the bylaws are silent as to whether they create a contractual relationship. *Brintley v. St. Mary Mercy Hosp.*, No. 12-2616, 2013 U.S. App. LEXIS 23144, at *7 (6th Cir. Nov. 15, 2013); *Grain v. Trinity Health*, 431 F. App'x 434, 450 (6th Cir. 2011).[10]

We agree with and follow our prior holdings that Medical Staff Bylaws do not create a contractual relationship in Michigan. Although Bhan may have agreed to abide by the Medical Staff Bylaws by applying for clinical-staff privileges, there is no language that indicates the hospitals intended the Medical Staff Bylaws to constitute a contract with individual physicians or the medical staff. There also is no indication that either Borgess or BCHS provided the requisite consideration for the Medical Staff Bylaws to create an enforceable contract. The hospitals are required by state law to adopt bylaws, rules and policies for eligibility and qualifications of

---

[10] Prior to this Circuit's recent decisions, the Eastern District of Michigan noted the split of authority as to whether medical staff bylaws constitute a contract and decided to follow the line of cases that held such bylaws created a contract. *Ritten v. Lapeer Reg'l Med. Ctr.*, 611 F. Supp. 3d 696, 734-35 (E.D. Mich. 2009) (Rosen, J). Yet, the same district court judge that decided *Ritten* also later decided *Brintley* wherein he followed this Circuit's *Grain* decision in holding that the medical staff bylaws did not constitute a contract. *Brintley v. St. Mary Mercy Hosp.*, 904 F. Supp. 2d 699, 721 (E.D. Mich. 2012) (Rosen, J.). This Circuit agreed that a contractual relationship did not exist in that case. *Brintley v. St. Mary Mercy Hosp.*, No. 12-2616, 2013 U.S. App. LEXIS 23144, at *7 (6th Cir. Nov. 15, 2013).

medical staff. M.C.L. §§ 331.6. The hospitals' fulfillment of their statutory obligation to adopt and conform their actions to the bylaws, rules, and regulations does not constitute the kind of separate consideration necessary for a contractual relationship. *Yerkovich v. AAA*, 461 Mich. 732, 740-41, 610 N.W.2d 542, 546 (Mich. 2000) ("Under the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise."). To carry out that responsibility, the hospitals delegated to the medical staff the responsibilities of overseeing the care, treatment, and services provided to practitioners with privileges. The Medical Staff Bylaws primarily describe the manner in which the medical staff is to self-govern and self-organize. The provisions therein that provide for amendment of the Medical Staff Bylaws at any time and that indicate the Board of Trustees is not bound by the medical-staff recommendations further demonstrate a lack of intent to be contractually bound. Accordingly, an enforceable contract does not exist with BCHS or Borgess based upon the Medical Staff Bylaws.

Accordingly, we affirm the district court's judgment on Counts 11, 12 and 13.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of all of the claims raised in this appeal.