MarkmAN, J.
The issue here is whether plaintiff, the disappointed lowest bidder on a public contract, had a valid business expectancy for the purpose of sustaining a claim of tortious interference with a business expectancy. The trial court held that plaintiff did not have such an expectancy, but a divided Court of Appeals panel held that a genuine issue of material fact exists in this regard. Because we agree with the trial court and the Court of Appeals dissent that plaintiff did not have a valid business expectancy, we reverse the judgment of the Court of Appeals and reinstate the trial court’s order granting defendant’s motion for summary disposition.
I. FACTS AND HISTORY
Davison Community Schools, a public school district, entered into a contract with defendant for architectural services with regard to a construction project. As part of the contract, defendant agreed to assist the school district *44 with the bid selection process by, among other things, evaluating the bids submitted by contractors and making a recommendation to the school district regarding which contractor should be awarded the project. Pursuant to defendant’s recommendation, the school district eventually awarded the project to US Construction and Design Services, LLC, the contractor that had submitted the second-lowest bid. Plaintiff, the contractor that submitted the lowest bid, sued defendant for tortious interference with a business expectancy.[1]
The trial court granted defendant’s motion for summary disposition, concluding that plaintiff did not have a valid business expectancy. In a split decision, the Court of Appeals reversed, holding that a genuine issue of material fact existed in this regard. Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc, 290 Mich App 577; 802 NW2d 682 (2010). Judge Kirsten Frank Kelly dissented, agreeing with the trial court that plaintiff did not have a valid business expectancy. We ordered and heard oral argument on whether to grant defendant’s application for leave to appeal and specifically asked the parties to
address whether the Court of Appeals erred when it determined that there are genuine issues of material fact as to (1) whether the plaintiff, a disappointed low bidder on a public contract, had a valid business expectancy and (2) whether the defendant architectural firm’s communications, made pursuant to an agreement with the contracting *45 school district, amounted to intentional and improper conduct sufficient to sustain a claim of tortious interference with a business expectancy. [Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc, 489 Mich 953, 953-954 (2011).][2]
II. STANDARD OF REVIEW
We review de novo a trial court’s decision on a motion for summary disposition. Driver v Naini, 490 Mich 239, 246; 802 NW2d 311 (2011).
III. ANALYSIS
The elements of tortious interference with a business relationship or expectancy are “ ‘the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff.’ ” Dalley v Dykema Gossett PLLC, 287 Mich App 296, 323; 788 NW2d 679 (2010), quoting BPS Clinical Laboratories v Blue Cross & Blue Shield of Mich (On Remand), 217 Mich App 687, 698-699; 552 NW2d 919 (1996). The issue here is whether plaintiff, as the lowest bidder on a public contract, had a valid business expectancy. In order to establish this, “[t]he expectancy must be a reasonable likelihood or probability, not mere wishful thinking.” Trepel v Pontiac Osteopathic Hosp, 135 Mich App 361, 377; 354 NW2d 341 (1984). We agree with the trial court and the Court of Appeals dissent that plaintiff did not have a valid business expectancy because plaintiff had no reasonable expectation of being awarded the contract, only “wishful thinking.”
*46 That plaintiff as the lowest bidder on a public contract had no valid business expectancy is supported by the longstanding rule in Michigan that a disappointed low bidder on a public contract has no standing to sue in order to challenge the award of a contract to another bidder. Detroit v Wayne Circuit Judge, 128 Mich 438, 439; 87 NW 376 (1901) (“As a bidder, the complainant has no standing.”). In Talbot Paving Co v Detroit, 109 Mich 657, 660, 662; 67 NW 979 (1896), this Court held that “the lowest bidder, under a contract proposed to be let by a municipal corporation, whose bid has been rejected, [does not have] a right of action at law to recover profits which he might have made had his bid been accepted. ” This Court reached this conclusion even though “under the charter of Detroit, it was the duty of the city to let the contract to the lowest responsible bidder____” Id. at 660. This Court held that the charter did not provide for a private cause of action because it “was not passed for the benefit of the bidder, but as a protection to the public.” Id. “The charter provision which required the acceptance of the lowest responsible bid had no reference to any interest which the bidders might have in the premises, but was passed to protect the interest of the citizens of the city.” Id. at 662 (emphasis added); see also Lasky v City of Bad Axe, 352 Mich 272, 276; 89 NW2d 520 (1958) (stating that these provisions “are enacted for the benefit of property holders and taxpayers, and not for the benefit of or enrichment of bidders”).
Given that a contractor that submits the lowest bid cannot bring a cause of action against the municipality when its bid is rejected, even when the municipality has adopted a charter provision that requires it to accept the “lowest responsible bidder,” it is difficult to fathom how plaintiffs submission of the lowest bid could have created a valid business expectancy in light of the highly discretionary process of awarding governmental con *47 tracts. In terms of whether a valid business expectancy is created, a plaintiffs expectations are entirely the same regardless of whether it alleges that the government has wrongfully denied it the contract or, as here, that a third party has interfered and caused a denial of the contract. In addition to the common-law rule, MCL 380.1267(6) expressly states that “[t]he board, intermediate school board, or board of directors may reject any or all bids . ...” As the Court of Appeals dissent explained, “when the ultimate decision to enter into a business relationship is, by statute, a highly discretionary decision, a plaintiff cannot establish that its ‘business expectancy’ [reflected] a reasonable likelihood or possibility and not merely wishful thinking.” Cedroni, 290 Mich App at 623 (K. F. KELLY, J., dissenting). In light of the common-law rule that a bidder that submits the lowest bid has no cause-of-action against the public entity that rejects this bid and the statutory provision that allows the school district to “reject any or all bids,” MCL 380.1267(6), a bidder on a school construction project should know that its submission of the lowest bid does not create a reasonable probability that the school district will award it the contract. See Lasky, 352 Mich at 276 (“[O]ne making a bid or entering into a contract with a municipality, acts at his peril; he is supposed to know the law.”); see also EBI-Detroit, Inc v Detroit, 279 Fed Appx 340, 352 (CA 6, 2008) (“Michigan courts have already rejected the idea that a disappointed bidder has a valid business expectancy in a potential government contract.”).[3]
*48 In the instant case, not only should the common-law rule and MCL 380.1267(6) have made plaintiff aware that its submission of the lowest bid did not create a valid business expectancy, but documents provided by the school district before plaintiff even submitted its bid should also have made this perfectly clear. For example, both the advertisement for bids and the instructions to bidders included in the project manual expressly stated that the school district “reserves the right to accept or reject any or all offers.” The school district’s fiscal management policy also stated multiple times that the school district has the “right to reject any or all bids” and further stated that “the lowest dollar cost bidder may not always receive award of the bid.” See Leavy v City of Jackson, 247 Mich 447, 450; 226 NW 214 (1929), quoting 3 McQuillin, Municipal Corporations (2d ed), p 919 (“Reservation of right to reject any and all bids, where the authorities have power to make such reservation, gives the right to let the contract to any bidder and reject the others, although the one securing the contract is not the lowest bidder[.]”). Finally, Clay Perkins, the superintendent of the school district, averred by affidavit that “[wjhile [plaintiff] submitted *49 the low bid, there was no communication of any intent to accept [plaintiffs] bid.” That plaintiff did, in fact, understand that it might not be awarded the contract even though it was the lowest bidder is evidenced by a letter written by plaintiffs president, Richard Cedroni, to the school district, in which he stated:
We are the apparent low bidders on the Additions and Renovations at Hill and Siple Elementary. I look forward to working with the Davison Schools on this project and I expect you will be more than pleased with my company’s performance and professionalism, if awarded. [Emphasis added.]
The Court of Appeals recognized that “the submission of the lowest bid, in and of itself, was inadequate to sustain plaintiffs suit” and “reject[ed] any rule per se that would allow litigation to proceed simply on the basis of proof of the lowest bid” because submission of the lowest bid does not, by itself, create a valid business expectancy. Cedroni, 290 Mich App at 582.[4] However, the Court concluded that the school district’s fiscal management policy, coupled with plaintiffs submission of the lowest bid, did create a valid business expectancy because the former stated that “[b]ids shall be awarded in compliance with applicable bidding obligations imposed by law to the ‘lowest responsible bidder.’ ”
“Lowest responsible bidder” is defined in the policy as a “responsible contractor,” and “responsible contrac *50 tor” is defined as a “contractor determined by the [school district] to be sufficiently qualified to satisfactorily perform the Construction Project. . . The policy then provides a list of factors for the school district to consider in determining whether a contractor is properly characterized as a “responsible contractor,” including “an overall review of the Responsibility Criteria,” “the input of the District’s architect(s),” and “other relevant factors.” The “responsibility criteria” include numerous considerations such as “projects completed within the past three (3) years”; “experience with construction techniques, trade standards, project scheduling, cost control, management of projects and building codes, particular to the Construction Project”; “[references from individuals or entities that have received in the past three (3) years, or that are currently receiving the contractor’s services, including information regarding records of performance, job site cooperation, and long term quality standards”; and “any additional criteria that [the school district] may deem relevant for purposes of making a determination of contractor responsibility . . . .”
In Mago Constr Co v Anderson, Eckstein & Westrick, Inc, unpublished opinion per curiam of the Court of Appeals, issued November 8,1996 (Docket No. 183479), a case involving facts similar to the instant case, the Court of Appeals affirmed the trial court’s order granting the defendant’s motion for summary disposition. The defendant was a corporation of professional consulting engineers and the plaintiff was the disappointed lowest bidder. The plaintiff sued the defendant for, among other things, tortious interference with a business expectancy. The Court of Appeals explained, “Where the ultimate decision to enter into a business relationship is a highly discretionary decision reposed within the structure of a governmental entity, it be *51 comes more difficult for a plaintiff to prove that it had an expectancy of doing business with the governmental body.” Mago, unpub op at 3. The Court of Appeals concluded that the plaintiff had no valid business expectancy because
the award of the contract was a highly discretionary governmental activity in which “too many factors [were] in play to be able to reasonably infer that. .. plaintiff would have obtained the desired [contract].” Moreover, the bidding instructions clearly informed plaintiff that the lowest bidder was not guaranteed to receive the water main improvement contract. [Id. (citation omitted; first alteration in the original).]
Although Mago is an unpublished and therefore nonbinding opinion of the Court of Appeals,[5] and, as the dissent points out, the facts in Mago are not identical to those in the instant case, we nevertheless find its reasoning persuasive.
In the instant case, although the school district’s fiscal management policy provided that the contract would be awarded to the “lowest responsible bidder,” the school district itself retained the right to choose the “lowest responsible bidder.” The policy provided a non-exhaustive list of factors for the school district to consider, including its architect’s input. Therefore, just as in Mago, “the award of the contract was a highly discretionary governmental activity in which ‘too many factors [were] in play to be able to reasonably infer that. . . plaintiff [by virtue alone of being the lowest bidder] would have obtained the desired [contract].’ ” Id. (citation omitted; first alteration in the original). In addition, “the bidding instructions clearly informed plaintiff that the lowest bidder was not guaranteed to *52 receive the .. . contract.” Id. Because the school district retained a broad discretionary right to reject the lowest bidder, plaintiff could not have had a valid business expectancy.[6] See also Talbot, 109 Mich 657, and Leavy, 247 Mich 447, both of which involved city charters that contained the same “lowest responsible bidder” requirement and yet this Court held that the lowest bidder could not sue on the basis of not being awarded the contract. See also EBI-Detroit, Inc, 279 Fed Appx at 343, 353, in which, although the city of Detroit “made it clear that the Belle Isle Project would be awarded to the lowest bidder who was both responsive and responsible,” the United States Court of Appeals for the Sixth Circuit held, in an unpublished and nonbinding opinion, that the plaintiff, who was the lowest responsive bidder, “had a ‘unilateral hope’ of winning the contract, nothing more, so its tortious interference claim cannot proceed.” (Citation omitted; emphasis omitted.)
We agree with the Court of Appeals dissent that the school district’s fiscal management policy did not afford plaintiff a valid business expectancy. The school district determined that plaintiff was not a “responsible contractor” in this specific circumstance, and it is not our *53 job to second-guess this determination. See Kundinger v City of Saginaw, 132 Mich 395, 405; 93 NW 914 (1903) (“The law does not give to courts the power to substitute their judgment for the honest judgment of the board.”); Warda v Flushing City Council, 472 Mich 326, 333; 696 NW2d 671 (2005) (“Whether the council acted wisely or unwisely, prudently or imprudently, is not for the consideration or determination of this Court.”); Leavy, 247 Mich at 450, quoting 3 McQuillin, § 1340 (“ ‘The court will indulge the presumption that the authorities acted in good faith in awarding the contract.’ ”).
“ ‘The exercise of discretion to accept or reject bids [involving public contracts] will only be controlled by the courts when necessary to prevent fraud, injustice or the violation of a trust.’” Leavy, 247 Mich at 450, quoting 3 McQuillin, § 1340. In this case, there is no evidence that this Court’s intervention is “necessary to prevent fraud, injustice or the violation of a trust.” Rather, as the Court of Appeals dissent explained, plaintiff “is simply attempting to substitute [its] own judgment for that of the school district,” and “[w]hile plaintiff may believe its .. . judgment to be superior to that of the school board, the statute endows the school board, not plaintiff, with the discretion to award contracts in the school board’s best interest.” Cedroni, 290 Mich App at 625 (K. F. KELLY, J., dissenting).[7] Because plaintiff had no valid business expectancy, and because there is no evidence that this Court’s involvement is *54 “necessary to prevent fraud, injustice or the violation of a trust,” plaintiffs claim of tortious interference with a business expectancy must fail as a matter of law.[8]
rv CONCLUSION
For these reasons, we reverse the judgment of the Court of Appeals and reinstate the trial court’s order granting defendant’s motion for summary disposition. As the trial court and the Court of Appeals dissent concluded, plaintiff had no valid business expectancy for the purposes of sustaining a claim of tortious interference with a business expectancy.
Young, C.J., and Mary Beth Kelly and Zahra, JJ., concurred with MARKMAN, J.

 According to defendant, its decision to recommend US Construction rather than plaintiff was predicated on the fact that the references supplied by plaintiff gave negative feedback and US Construction had provided construction services for other projects designed by defendant for the school district and had performed the work adequately. According to plaintiff, on the other hand, defendant’s decision to recommend US Construction rather than plaintiff was based on defendant’s desire “to punish [plaintiff] for what occurred on the Holly Academy project wherein [defendant] was ultimately replaced by another architect.”

 Because we conclude that plaintiff did not have a valid business expectancy, it is unnecessary for us to address the second issue.

 The dissent argues that our decision to apply the “disappointed-bidder rule” to private entities is “contrary to the purpose of the disappointed-bidder rule: to protect taxpayers.” Post at 63. However, if this case had anything at all to do with protecting taxpayers, plaintiff “should have proceeded by injunction to prevent the doing of the work under the [US Construction] contract” instead of “l[ying] by, and, after *48 the work had been done and paid for, ask for profits which it might have made if it had been permitted to perform its contract.” Talbot, 109 Mich at 659. By adopting MCL 380.1267(6), which allows the school board to “reject any or all bids,” the Legislature has determined that the school board is in the best position to “protect taxpayers,” and "[t]he law does not give to courts the power to substitute their judgment for the honest judgment of the board.” Kundinger v City of Saginaw, 132 Mich 395, 405; 93 NW 914 (1903). Finally, as we explain in footnote 8, we are not immunizing from liability a private entity that “acts with dishonesty and bad faith to interfere with the governmental entity’s efforts,” post at 64 n 2; instead, we are simply holding that when the ultimate decision to enter into a business relationship is a highly discretionary decision reposed by law within a governmental entity, a disappointed low bidder does not have a valid business expectancy for the purpose of sustaining a claim of tortious interference with a business expectancy.

 The dissent, on the other hand, concludes that “once a qualified bidder has submitted a conforming bid and knows that it has provided the lowest bid, there might he a genuine issue of material fact regarding whether the bidder’s expectation reasonably elevated from a ‘mere hope’ to a ‘realistic expectation’ that it would be awarded the project. . . Post at 59. This conclusion is simply incompatible with both MCL 380.1267(6), which expressly states that the school board “may reject any or all bids,” and the documents presented to plaintiff, which equally clearly state that “the lowest dollar cost bidder may not always receive award of the bid.”

 MCR 7.215(C)(1) (“An unpublished opinion is not precedentially binding under the rule of stare decisis.”).

 The Court of Appeals majority relied, as does the dissent in this Court, on Joba Constr Co, Inc v Burns & Roe, Inc, 121 Mich App 615; 329 NW2d 760 (1982), to support its holding that a genuine issue of material fact exists regarding whether plaintiff had a valid business expectancy. However, given that Joba “never explained the nature of the evidence presented [in that case] that gave rise to a legitimate business expectancy,” we do not find Joba to be a particularly helpful decision. Cedroni, 290 Mich App at 626 (K. F. Kelly, J., dissenting). Moreover, “[t]his Court, of course, is not bound by Court of Appeals decisions.” Catalina Mktg Sales Corp v Dep’t of Treasury, 470 Mich 13, 23; 678 NW2d 619 (2004). Contrary to the dissent’s assertion, we do not reject Joba simply because it is not binding authority. See post at 62 n 1. Rather, we reject Joba, and adopt Mago, because we find the analysis of Mago to be more persuasive than that of Joba.

 The dissent states that “plaintiff presented evidence that defendant’s opinion and recommendation regarding plaintiffs qualifications might have been improperly influenced by misplaced or unsupported animosity toward plaintiff related to problems between plaintiff and defendant on a previous project.” Post at 59. However, the only “evidence” that plaintiff has presented to support its allegation that defendant “improperly influenced” the school district are plaintiffs own statements.

 Plaintiff argues that an architect should not be immune from liability for making false statements about a low bidder. Similarly, the dissent argues that this Court should “not protect a private entity that dishonestly influences the governmental entity.” Post at 65. However, we do not hold that an architect is “immune from liability” for making false statements about a low bidder. Instead, we simply hold that when the ultimate decision to enter into a business relationship is a highly discretionary decision reposed by law within a public entity, a disappointed low bidder does not have a valid business expectancy for the purpose of sustaining a claim of tortious interference with a business expectancy.